```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------X

FAITH MAURA, AS ADMINISTRATRIX AND
PERSONAL REPRESENTATIVE OF THE
ESTATE OF TINA MARIE CHEEK, DECEASED,
AND GEORGE ROUMELIOTISAS CHAPTER 7
TRUSTEE IN BANKRUPTCY OF FAITH MAURA,           12 Civ. 8909
INDIVIDUALLY,

                 Plaintiff,                    OPINION

     -against-

ACL LEASING, LLC AND JEAN PHILLIPE BRUNY,

                 Defendant.

-----------------------------------------X

A P P E A R A N C E S:



          Attorneys for Plaintiff

          MCMAHON, MARTINE & GALLAGHER, LLP
          55 Washington Street, Suite 720
          Brooklyn, NY 11201
          By:  Patrick W. Brophy, Esq.


          Attorneys for Defendants

          SOBEL LAW GROUP, LLC
          464 New York Avenue, Suite 100
          Huntington, NY 11743
          By:  David M. Goldman, Esq.
```

**Sweet, D.J.**

The defendants ACL Leasing, LLC ("ACL") and Jean Phillipe Bruny ("Bruny") (collectively, the "Defendants") have moved pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing the action of the plaintiffs Faith Maura ("Maura"), as administratrix and personal representative of the estate of Tina Marie Cheek ("Cheek"), and George Roumeliotisas, as Chapter 7 Trustee in Bankruptcy of Faith Maura, Individually (the "Trustee") (collectively, the "Plaintiffs").  Based upon the facts and conclusions set forth below, the motion is denied.

**Prior Proceedings**

On August 5, 2011, Maura, a Connecticut resident, initiated this personal injury action arising out of the death of her sister, Tina Maria Cheek, who was allegedly struck by a bus owned by ACL and operated by Bruny on September 12, 2009.

The action was removed to the District Court for the Southern District of New York on September 14, 2011 under 11-CV-6413.  On February 6, 2012, this Court dismissed the initial

1

action in light of Defendant's pending bankruptcy case before the United States Bankruptcy Court for the District of Delaware. On December 7, 2012, Plaintiffs filed the operative complaint under the current civil case number.

The instant motion was heard and marked fully submitted on October 1, 2014.

**The Facts**

The material facts are set forth in the Defendants' Rule 56.1 Statement and the Plaintiffs' Rule 56.1 Statement. The facts are not in dispute except as noted below.

On September 12, 2009, Bruny had a valid commercial driver's license issued in Florida ("CDL") that permitted him to operate the type of bus that he was driving at the time of the incident. Defs.' R. 56.1(a) Statement ¶ 2; Pls.' R. 56.1(a) Statement ¶ 2. Bruny first obtained the CDL in 2006, by attending the CDL School for Special Training in Miami, Florida. Bruny Dep. 26:5-25. Bruny was trained on operating a bus, pedestrian safety and using the vehicle's mirrors to keep a lookout of potential accidents to the side and behind the bus. Bruny Dep. 15:13-19:19, 27:2-28:14. Bruny was trained to check

2

both mirrors and his side window every 10 to 15 seconds in order to identify potential hazards on the sides and rear of the bus. Bruny Dep. 15:13-19:19.  He was trained to position his head out of the bus's driver's side window in order to observe pedestrians in proximity to the bus or those approaching the rear tires of the bus.  Bruny Dep. 15:13-19:19.  Part of Bruny's 2006 CDL training included the use of side view mirrors to avoid pedestrians.  Bruny Dep. 15:13-19:19.

Bruny testified that on September 12, 2009, he was driving eastbound on West 40th Street, just prior to letting his passengers off at a stop, and that his traffic light was green as he approached the intersection of West 40th Street and 8th Avenue in Manhattan.  Defs.' R. 56.1(a) Statement ¶ 5; Pls.' R. 56.1(a) Statement ¶ 5.

Bruny testified that he first became aware that his bus came into contact with a person after his bus was parked, when speaking with New York Police Department ("NYPD") officers. Defs.' R. 56.1(a) Statement ¶ 3; Pls.' R. 56.1(a) Statement ¶ 3. Bruny testified that, prior to speaking with the NYPD officers, he was not aware of any incident and had stopped the bus at the location only because a group of his passengers requested that

3

they be dropped off there.  Defs.' R. 56.1(a) Statement ¶ 3; Pls.' R. 56.1(a) Statement ¶ 3.

Bruny testified that he related a consistent narrative to several NYPD officers with whom he spoke:  he did not hit or drive over someone on the street, he did not observe Cheek at all on September 12, 2009 (either before or after the incident), and he had never told any police officer that he did hit someone that day.  Defs.' R. 56.1(a) Statement ¶ 4; Pls.' R. 56.1(a) Statement ¶ 4.  Plaintiff disputes this testimony on the basis of reports produced by the NYPD, which stated that Cheek was in the crosswalk and run over by the right rear wheel of the bus Bruny was operating.  Pls.' Mem. in Opp'n 1-2.

Cheek was dead when NYPD Officer Peter Jarvis ("Officer Jarvis") arrived at the scene of the incident. Defs.' R. 56.1(a) Statement ¶ 10; Pls.' R. 56.1(a) Statement ¶ 10. Therefore, Jarvis did not see Cheek alive, either prior to or following the incident, did not speak to Cheek following the incident, nor did he perform or witness anyone CPR on Cheeks. Defs.' R. 56.1(a) Statement ¶ 11; Pls.' R. 56.1(a) Statement ¶ 11.  Officer Jarvis testified that he does not know of anyone who was an actual witness to the accident involving Cheek.

Defs.' R. 56.1(a) Statement ¶ 12; Pls.' R. 56.1(a) Statement ¶ 12.

Cheek's body was removed from the scene of the incident and transported directly to the morgue. Defs.' R. 56.1(a) Statement ¶ 8; Pls.' R. 56.1(a) Statement ¶ 8. Giovanni B. Ramundo, MD ("Dr. Ramundo"), a board certified pain management specialist and anesthesiologist, reviewed the pertinent documents associated with this accident and concluded, within a reasonable decree of medical probability, that Cheek was conscious and suffered for five or six minutes after the accident because the impact did not render her unconscious. Ramundo Report at 1. There is no pecuniary loss alleged in this case. Defs.' R. 56.1(a) Statement ¶ 6; Pls.' R. 56.1(a) Statement ¶ 6.

Maura first learned of Cheek's death two weeks after the subject incident and does not know of anyone that spoke to her sister following the incident. Defs.' R. 56.1(a) Statement ¶ 6; Pls.' R. 56.1(a) Statement ¶ 6.

ACL Leasing, LLC was identified as the owner of the bus driven by Bruny. Jarvis Dep. 18:15-19:16.

**The Rule 56 Standard**

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.  A court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. Westinghouse Elec. Corp. v. N.Y. City Transit Auth., 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting Anderson, 477 U.S. at 249).

A fact is "material" only if it will affect the outcome of the suit under applicable law, and such facts "properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.  Disputes over irrelevant facts will not preclude summary judgment. Id.  The goal is to "isolate and

dispose of factually unsupported claims." Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). "[I]t ordinarily is sufficient for the movant to point to a lack of evidence . . . on an essential element of the non-movant's claim . . . . [T]he nonmoving party must [then] come forward with admissible evidence sufficient to raise a genuine issue of fact for trial . . . ." Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008) (internal citations omitted); see also Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) ("Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party . . . must come forward with evidence that would be sufficient to support a jury verdict in his favor."). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

**Material Facts Are in Dispute**

According to the Defendants, there is no probative evidence of Defendants' negligence or of Cheeks' conscious pain and suffering. See generally Defs.' Mem. in Supp't. 7-20. The Plaintiffs disagree, citing the NYPD reports, Dr. Ramundo's statements, and the New York State Court of Appeal's decision in

Noseworthy v. City of New York. 298 N.Y. 76, 80 N.E.2d 744 (1948). See generally Pls.' Mem. in Opp'n 1-2, 4-5, 8-10.

Under New York law, the plaintiff in a wrongful death action based on negligence is not held to as high a degree of proof as is required in a case where the injured person may take the stand and give their version of the occurrence. Noseworthy, 298 N.Y. at 78. "[W]here the management and control of the thing which has produced the injury is exclusively vested in the defendant, it is within his power to produce evidence of the actual cause that produced the accident, which the plaintiff is unable to present." Id. at 80-81. "The plaintiff's evidence is deemed sufficient to make out a prima facie case if it shows facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred." In re Lattimore's Estate, 316 N.Y.S.2d 363, 364-65 (App. Div. 1970)

In Noseworthy, the decedent somehow got down from the platform of defendant's subway station to the tracks and was struck by a train. Id. at 78. He died a few hours later. Id. At trial, there was no testimony as to how the decedent got onto the tracks or as to whether he was conscious or unconscious when he was struck. Id. Defendant's motorman was the only

8

eyewitness.  Id.  The jury returned a defense verdict, and the Court of Appeals reversed, citing the decedent's lower standard of proof.  Id. at 79.  The facts in this case are analogous to those in Noseworthy, and favor application of the lower standard.

Under the Noseworhty standard, material facts remain, which militate against granting the motion for summary judgment. Specifically, the police reports produced contradict Bruny's testimony.  As summarized above, Bruny denies running over Cheek.  However, the Police Accident Report filed with respect to Cheek's death states:

> Veh(1) [operated by Mr. Bruny] traveling E/B on W40 Street after proceeding thru intersection @ 8th Avenue did roll over pedestrian [Cheek] with right rear tires.  Pedestrian apparently in crosswalk crossing in unknown direction.

Jarvis Dep. 23:6-12 (emphasis added).

Similarly, the Preliminary Report filed with respect to Cheek's death states:

> The preliminary investigation reveals the following: Vehicle #1 was traveling eastbound on West 40th Street at the intersection of 8th Avenue with a green traffic signal and proceeding straight.  The pedestrian

9

<u>apparently fell to the pavement and was struck by the right rear wheels of vehicle #1 suffering massive internal injuries.</u>  The operator of vehicle #1 was initially unaware of the collision but did stop on West 40th Street east of 8th Avenue and remained at that location when he was alerted to the collision.  A visual inspection of vehicle #1 did not reveal any evidence of the pedestrian being struck by any forward portion of the vehicle.  A broken glass bottle of vodka was found in close proximity to the pedestrian's final place of rest.  Based on interviews with persons at the scene who provided the tentative identification of the victim, it is believed that the pedestrian was intoxicated at the time.  All traffic and pedestrian signals appeared to be functioning properly.  The area was canvassed for surveillance cameras but none were found to have had a view of that portion of the roadway where the collision occurred.

Jarvis Dep. 38:21-43-23 (emphasis added).

In addition to conflicting with the police reports regarding the incident, Bruny is a defendant to the action whose testimony and credibility are at issue.  Plaintiffs assert that Bruny violated New York state law by failing to exercise reasonable care exercise reasonable care when operating the bus in a crowded intersection.  <u>See generally</u> Pls.' Mem. in Opp'n 6-7 <u>citing</u> Veh. & Traf. L. § 1146(a).  Under Section 1146, Bruny was obligated to "exercise due care to avoid colliding with . . . [a] pedestrian . . . upon any roadway and . . . give warning by sounding the horn when necessary."  Veh. & Traf. L. § 1146(a).  Bruny was trained to use his mirrors and driver's side window to ensure passengers would not be struck by the rear

10

of his vehicle and testified that he consistently adhered to his training, yet he failed to see Cheek until stopping the bus several blocks after the accident.  See Defs.' R. 56.1(a) Statement ¶ 4; Pls.' R. 56.1(a) Statement ¶ 4; Bruny Dep. 15:13-19:19, 27:2-28:14.

Section 1146 further provides that "[i]f [a] driver of a motor vehicle causes physical injury while failing to exercise due care in violation of subdivision (a) of this section, then there shall be a rebuttable presumption that, as a result of such failure to exercise due care, such person operated the motor vehicle in a manner that caused such physical injury." Veh. & Traf. L. § 1146(b)(2).  With a pedestrian in a crosswalk, Bruny was obligated to yield to Cheek by either slowing down or stopping.  See Veh. & Traf. L. § 1151(a).

In sum, several material issues of fact remain with respect to negligence, including whether: Cheeks was in the crosswalk, requiring Bruny to give her the right of way; Bruny exercise due care in operating the bus; and Bruny's version of events is credible given his position as a Defendant in this case.  See Williams v. Spencer-Hall, 979 N.Y.S.2d 157, 159 (2d Dept. 2014).  ACL's liability, derivative from Bruny's under

11


respondeat superior, is therefore also at issue.  See Halpin v. Hernandez, 857 N.Y.S.2d 719, 720 (App. Div. 2008).

A separate material issue of fact exists with respect to Cheek's damages.  In the absence of a Daubert motion from Defendants, a trier of fact is best suited to weigh Dr. Ramundo's analysis of the autopsy against Defendants' assertions, i.e., to determine whether Cheeks was conscious for several minutes following impact or whether she succumbed upon impact with the tires of the bus, and therefore did not suffer conscious pain and suffering.

Under these facts and authorities, disputes have been established as to the duty of reasonable care and conscious pain and suffering.

## Conclusion

The motion of the Defendants for summary judgment is denied, material facts being in dispute.

It is so ordered.

New York, NY
December 19, 2014

_____
ROBERT W. SWEET
U.S.D.J.